# IN THE SUPREME COURT OF CALIFORNIA

In re KENNETH D., a Person Coming
Under the Juvenile Court Law.

---

PLACER COUNTY DEPARTMENT OF
HEALTH AND HUMAN SERVICES,
Plaintiff and Respondent,

v.

J.T.,
Defendant and Appellant.

S276649

Third Appellate District
C096051

Placer County Superior Court
53005180

---

August 19, 2024

Justice Corrigan authored the opinion of the Court, in which
Chief Justice Guerrero and Justices Liu, Kruger, Groban,
Jenkins, and Evans concurred.

Justice Groban filed a concurring opinion, in which Chief
Justice Guerrero concurred.

---

This opinion precedes companion case *In re Dezi C.*, S275578, also filed this date.

In re KENNETH D.

S276649


Opinion of the Court by Corrigan, J.


The federal Indian Child Welfare Act of 1978 (25 U.S.C. § 1901 et seq.; ICWA) and California implementing law require juvenile dependency courts and appropriate agencies to inquire into a child's native heritage and to notify a relevant tribe if there exists "reason to know that an Indian child is involved . . . ." (25 U.S.C. § 1912(a); see Welf. & Inst. Code, §§ 224.2, 224.3, subd. (a).) The question here is, when the required initial inquiry was inadequate, may an appellate court consider *postjudgment* evidence to conclude the error was harmless?

We hold that, absent exceptional circumstances, a reviewing court may not generally consider postjudgment evidence to conclude the error was harmless. The sufficiency of an ICWA inquiry must generally be determined by the juvenile court in the first instance. Because no exceptional circumstances exist here, the Court of Appeal's consideration of previously unadmitted evidence on appeal was error. In *In re Dezi C.* (_____, 2024, S275578) ___ Cal.5th ___ (*Dezi C.*), also filed today, we address the appropriate standard of harmless error review where the inquiry into a child's native heritage was inadequate, and conclude that a judgment must be conditionally reversed when error results in an inadequate ICWA inquiry. (*Dezi C.*, at p. ___ [p. 38.]) Here, as in *Dezi C.*, there is no dispute that the inquiry below was inadequate. We reverse the Court of Appeal's judgment with directions to conditionally reverse the

1

juvenile court's order terminating parental rights and remand for compliance with ICWA and California implementing statutes.

## I. BACKGROUND

Born eight weeks prematurely, minor Kenneth D. (Kenneth) tested positive for amphetamine and syphilis shortly after his delivery. His mother, C.B. (mother) admitted using methamphetamine throughout her pregnancy, including three days before his birth. Mother had given birth under similar circumstances in 2016 and that son was removed from her custody. At the time of Kenneth's birth, mother had been living with T.D., who was also suspected of drug use. The Placer County Department of Health and Human Services (the department) filed a juvenile dependency petition to remove Kenneth from the custody of mother and T.D. (Welf. & Inst. Code, § 300, subds. (b)(1), (j).)

The initial detention report by the department indicated mother was not sure whether T.D. or another man, B.F., was Kenneth's father. The department asked mother and T.D. about their potential native heritage. Mother stated she might have native ancestry on her father's side through a tribe from Kentucky, though she was not an enrolled member. T.D. indicated he might have Cherokee ancestry on his mother's side.[1] At the detention hearing, however, both mother and T.D. denied having any native heritage and the juvenile court found ICWA did not apply. Kenneth was placed into the department's temporary custody.

---

[1] The department made similar inquiries of B.F.

Paternity testing revealed that neither T.D. nor B.F. was Kenneth's biological father. J.T. (J.T. or father) was later confirmed as being Kenneth's parent. The next hearing a month later occurred before the results of J.T.'s paternity test had been received. The juvenile court recognized T.D. as the presumed father, noting he had submitted a voluntary declaration of paternity and his name appeared as the father on Kenneth's birth certificate. Kenneth was adjudged a dependent and removed from the parents' custody, with visitation and reunification services ordered. The court found ICWA did not apply. The court did not initially offer services to J.T. but indicated the matter could be placed back on calendar if testing confirmed his paternity. The court did not ask about J.T.'s potential native heritage. After receiving the paternity test result, the department could not locate father and he was not present during a court hearing for a three-month review.

At the six-month review hearing, the juvenile court terminated reunification services for mother and T.D. and set the matter for a termination of parental rights hearing. (Welf. & Inst. Code, § 366.26.) J.T. was present at that time and requested a continuance, explaining that his attorney was not available. He told the court he would request reunification services and amendment of Kenneth's birth certificate. The court denied a continuance and instead instructed father to file a petition to modify or terminate jurisdiction. (Welf. & Inst. Code, § 388.) Again, without inquiry of J.T., the court found ICWA did not apply.

The department recommended the parental rights of mother and T.D., as well as father, be terminated and Kenneth be cleared for adoption by his foster family. The department's report indicated it had contacted the maternal grandmother,

who said her family did not have any native heritage. The department also contacted T.D.'s mother, who indicated the same. Neither J.T. nor his family was contacted as to possible native heritage. At the termination hearing, father stated his counsel again could not attend. He did not object to termination of his rights but did seek visitation. The juvenile court terminated parental rights and approved the adoption plan for Kenneth. The court made no mention of ICWA. Father filed a notice of appeal.

On April 29, 2022, before the filing of an opening brief in the Court of Appeal, the department requested that the appellate court augment the record on appeal. The motion attached an April 27 memo describing the department's postjudgment efforts to comply with ICWA. The memo indicated the department contacted father on April 21, 2022. He "stated that he thought he might have Cherokee ancestry out of Oklahoma" and suggested contacting his mother for further information. That same day, the department did so. J.T.'s mother denied that J.T. had native heritage. Instead, she reported that "all of their family comes from Mexico." She said she had "completed a blood DNA ancestry test which came back stating that they had Native Heritage." She explained that "all of her family is actually from Culicán Sinaloa, Mexico," identified her parents, and stated both of *her* paternal grandparents were born in Mexico. She was unaware of any Native American heritage and assumed her DNA test results were due to her Mexican ancestry. The memo further reported the department had contacted someone at the federal Bureau of Indian Affairs (BIA), who confirmed that, though the grandmother's DNA findings indicated native ancestry, her other relatives were from Mexico and thus not federally

recognized under ICWA. (See *post*, at p. 8, fn. 3.) According to the BIA, unless the grandmother knew the name of the tribe or is registered with one, the child is not considered an Indian child. Based on this information, the memo then asserted the department had no reason to know Kenneth is an Indian child. It requested that the Court of Appeal find ICWA was properly noticed and did not apply. The memo had been filed with the juvenile court on April 28, 2022, the day before the motion to augment in the Court of Appeal. The Court of Appeal granted the motion.

The only issues raised by J.T. on appeal were the failure to comply with the inquiry and notice provisions of ICWA and the significance of that failure. (See Welf. & Inst. Code, § 224 et seq.; Cal. Rules of Court, rule 5.480 et seq.) In a published opinion, the Court of Appeal concluded any error was harmless in light of the augmented record. (See *In re Kenneth D.* (2022) 82 Cal.App.5th 1027, 1034–1035.)

We granted father's petition for review. The sole issue before us is whether the Court of Appeal properly considered postjudgment evidence in concluding that any ICWA error was harmless. We begin with the relevant portions of ICWA and the state implementing scheme.

## II. DISCUSSION

### A. *Duty of Inquiry and Notice under ICWA and California Implementing Law*

"In 1978, Congress enacted the Indian Child Welfare Act (ICWA) out of concern that 'an alarmingly high percentage of Indian families are broken up by the removal, often unwarranted, of their children from them by nontribal public and private agencies.' [Citation.] Congress found that many of

5

these children were being 'placed in non-Indian foster and adoptive homes and institutions,' and that the States had contributed to the problem by 'fail[ing] to recognize the essential tribal relations of Indian people and the cultural and social standards prevailing in Indian communities and families.' [Citation.] [These state actions] harmed not only Indian parents and children, but also Indian tribes." (*Haaland v. Brackeen* (2023) 599 U.S. 255, 265.)

"At the heart of the ICWA are its provisions concerning jurisdiction over Indian child custody proceedings." (*Mississippi Choctaw Indian Band v. Holyfield* (1989) 490 U.S. 30, 36.) As relevant here, "[i]n any State court proceeding for the foster care placement of, or termination of parental rights to, an Indian child not domiciled or residing within the reservation of the Indian child's tribe, the court, in the absence of good cause to the contrary, shall transfer such proceeding to the jurisdiction of the tribe, absent objection by either parent, upon the petition of either parent or the Indian custodian or the Indian child's tribe . . . ." (25 U.S.C. § 1911(b).) "Various other provisions of ICWA Title I set procedural and substantive standards for those child custody proceedings that do take place in state court. The procedural safeguards include requirements concerning notice and appointment of counsel; parental and tribal rights of intervention and petition for invalidation of illegal proceedings; procedures governing voluntary consent to termination of parental rights; and a full faith and credit obligation in respect to tribal court decisions." (*Mississippi Choctaw Indian Band*, at p. 36.) ICWA also describes a preference for placement of Indian children with their extended families, members of their tribe, or other Indian families. (See 25 U.S.C. § 1915; *Haaland v. Brackeen, supra,* 599 U.S. at pp. 266–268.)

"The minimum standards established by ICWA include the requirement of notice to Indian tribes in any involuntary proceeding in state court to place a child in foster care or to terminate parental rights 'where the court knows or has reason to know that an Indian child is involved.' " (*In re Isaiah W.* (2016) 1 Cal.5th 1, 8 (*Isaiah W.*); see 25 U.S.C. § 1912(a); 25 C.F.R. § 23.11 (2024).) The tribe has a right to "intervene at any point in the proceeding" to invalidate a prior order of placement or termination of parental rights made in violation of ICWA. (25 U.S.C. § 1911(c); see 25 U.S.C. § 1914; see also Welf. & Inst. Code, § 224.4; Cal. Rules of Court, rule 5.487(a).) The notice requirements "facilitate a determination of whether the child is an Indian child under ICWA" and "ensure[] that an Indian tribe is aware of its right to intervene in or, where appropriate, exercise jurisdiction over a child custody proceeding involving an Indian child." (*Isaiah W.*, at p. 8.)

"In 2006, our Legislature enacted provisions that affirm ICWA's purposes [citation] and mandate compliance with ICWA." (*Isaiah W., supra,* 1 Cal.5th at p. 9; see *In re W.B.* (2012) 55 Cal.4th 30, 52; see also Welf. & Inst. Code, § 224 et seq.; Cal. Rules of Court, rule 5.480 et seq.) After passage of new federal regulations in 2016, California made additional amendments to portions of the Welfare and Institutions Code related to ICWA notice and inquiry requirements. (Stats. 2018, ch. 833, §§ 2–8; Stats. 2020, ch. 104, § 15.)

The protective provisions of ICWA turn on a determination of whether a minor is an "Indian child" as defined

by statute.[2] "A determination by an Indian tribe that a child is or is not a member of, or eligible for membership in, that tribe, or testimony attesting to that status by a person authorized by the tribe to provide that determination, shall be conclusive." (Welf. & Inst. Code, § 224.2, subd. (h); see Cal. Rules of Court, rule 5.481(b)(4); 25 C.F.R. § 23.108 (2024).) Of course, a tribe may only make such determination, or exercise its right of intervention, if it is made aware of the ongoing proceedings. Accordingly, the scheme requires the appropriate tribe be notified when the court or county welfare agency has *reason to know* the child is Indian.[3] (Welf. & Inst. Code, § 224.3, subd. (a); see 25 U.S.C. § 1912(a); 25 C.F.R. § 23.111(a) (2024).)

---

[2] An " 'Indian child' " is defined as an unmarried minor who "is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe" (25 U.S.C. § 1903(4)). An " 'Indian tribe' " is defined as "any Indian tribe, band, nation, or other organized group or community of Indians recognized as eligible for the services provided to Indians by the Secretary [of the Interior] because of their status as Indians . . ." (25 U.S.C. § 1903(8); see Welf. & Inst. Code, § 224.1, subd. (a).). For simplicity we use the term "tribe" to include all the groups identified as eligible to receive federal services. (See 25 C.F.R. § 83.6(a) (2024) [duty to publish list of eligible tribes annually]; 88 Fed.Reg. 2112 (Jan. 12, 2023) [2023 list].)

[3] Welfare and Institutions Code section 224.2, subdivision (d) lists several instances creating a reason to know a child is Indian. These include that the child, a person having an interest in the child, any participant in the proceedings, an officer of the court, or a representative of a tribe indicates the child is Indian; the child resides on a reservation or has been a ward of a tribal court; or the child or parent has identification indicating tribal membership or citizenship. (Welf. & Inst. Code, § 224.2, subd. (d)(1)–(6); see Cal. Rules of Court, rule 5.481(b).)

Fulfilling the notification duty requires sufficient inquiry into the child's native heritage. "The court, county welfare department, and the probation department have an affirmative and continuing duty to inquire whether a child . . . [facing a dependency or delinquency proceeding] is or may be an Indian child." (Welf. & Inst. Code, § 224.2, subd. (a); see Cal. Rules of Court, rule 5.481(a).) California's statutory scheme imposes a duty of initial inquiry on both the department and the court. The department's duty arises when a report of abuse or neglect is made and/or when the county takes the child into its temporary custody.[4] (Welf. & Inst. Code, § 224.2, subds. (a), (b).) The inquiry "includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child and where the child, the parents, or Indian custodian is domiciled." (Welf. & Inst. Code, § 224.2, subd. (b).)[5]

---

[4] We have granted review in *In re Ja.O.* (2023) 91 Cal.App.5th 672, review granted July 26, 2023, S280572, to decide whether the inquiry duty under Welfare and Institutions Code section 224.2, subdivision (b) applies to children taken into custody by means of a protective custody warrant (Welf. & Inst. Code, § 340). That issue is not before us, and we express no view on it here.

[5] A parent includes "any biological parent . . . of an Indian child" (25 U.S.C. § 1903(9)). An extended family member is "defined by the law or custom of the Indian child's tribe or, in the absence of such law or custom, shall be a person who has reached the age of eighteen and who is the Indian child's grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent." (25 U.S.C. § 1903(2); see Welf. & Inst. Code, § 224.1, subd. (c).)

Then, on the first appearance upon a petition, "the court shall ask each participant present in the hearing whether the participant knows or has reason to know that the child is an Indian child." (Welf. & Inst. Code, § 224.2, subd. (c); see Cal. Rules of Court, rule 5.481(a)(2); 25 C.F.R. § 23.107(a) (2024).)

A duty of *further* inquiry exists when "the court, social worker, or probation officer has *reason to believe* that an Indian child is involved in a proceeding, but does not have sufficient information to determine that there is reason to know that the child is an Indian child . . . ." (Welf. & Inst. Code, § 224.2, subd. (e), italics added.) There is reason to believe a child is Indian when there exists "information suggesting that either the parent of the child or the child is a member or may be eligible for membership in an Indian tribe." (Welf. & Inst. Code, § 224.2, subd. (e)(1); see *id.*, subd. (d).) Further inquiry includes, but is not limited to, interviewing the parents and extended family members, contacting the BIA and the State Department of Social Services for assistance, and contacting the relevant tribe and "any other person that may reasonably be expected to have information regarding the child's membership, citizenship status, or eligibility." (Welf. & Inst. Code, § 224.2, subd. (e)(2)(C); see *id.*, subd. (e)(2); Cal. Rules of Court, rule 5.481(a)(4).)

If proper inquiry reveals information creating reason to know a minor is an "Indian child," the relevant tribe must be notified, and "the court shall treat the child as an Indian child unless and until the court determines on the record and after review of the report of due diligence . . . and a review of the copies of notice, return receipts, and tribal responses . . . that the child does not meet the definition of an Indian child . . . ." (Welf. & Inst. Code, § 224.2, subd. (i)(1); see Cal. Rules of Court,

rule 5.481(b)(3); 25 C.F.R. § 23.107(b) (2024).)  Otherwise, "[i]f the court makes a finding that proper and adequate further inquiry and due diligence as required in this section have been conducted and there is no reason to know whether the child is an Indian child, the court may make a finding that . . . [ICWA] does not apply to the proceedings, subject to reversal based on sufficiency of the evidence." (Welf. & Inst. Code, § 224.2, subd. (i)(2); see Cal. Rules of Court, rule 5.481(b)(3)(A).)  Further, if a court or party subsequently receives information suggesting a reason to believe the child is Indian, the court must order further inquiry.  (Welf. & Inst. Code, § 224.2, subd. (i)(2).)

## B. *Appellate Review of Determination That ICWA Does Not Apply and Consideration of Postjudgment Evidence*

Here, the Court of Appeal recognized "the abject failure of the Department and juvenile court to inquire as to father's possible Native American heritage . . . ." (*In re Kenneth D., supra,* 82 Cal.App.5th at p. 1034.)  The department does not disagree but argues any failure of inquiry at the trial court level was cured by its later, postjudgment interview of father and the paternal grandmother.  The department asserts its inquiry provided "conclusive information" that "father does not have any Native American heritage," and ICWA does not apply.  Based on this assertion, the department urges a remand to the juvenile court for further ICWA inquiry would "be a futile act."  Father counters the Court of Appeal could not properly consider the department's postjudgment inquiry and the proper remedy is a conditional remand to the juvenile court.  We agree with father.

We turn to standards of appellate review. As noted, the Welfare and Institutions Code[6] provides that "[i]f the court makes a finding that proper and adequate further inquiry and due diligence as required in this section have been conducted and there is no reason to know whether the child is an Indian child, the court may make a finding that [ICWA] does not apply to the proceedings, subject to reversal based on sufficiency of the evidence." (§ 224.2, subd. (i)(2).) In reviewing a conclusion that ICWA does not apply, some courts have applied a standard substantial evidence test, "which requires us to determine if reasonable, credible evidence of solid value supports the court's" ICWA finding. (*In re A.M.* (2020) 47 Cal.App.5th 303, 314; see *D.S. v. Superior Court* (2023) 88 Cal.App.5th 383, 390; *In re M.M.* (2022) 81 Cal.App.5th 61, 70, review granted Oct. 12, 2022, S276099.) By contrast, other courts have used a hybrid standard, reviewing for substantial evidence whether there is reason to know a minor is an Indian child, and reviewing a finding of due diligence and proper inquiry for abuse of discretion. (See *In re E.C.* (2022) 85 Cal.App.5th 123, 143–144; *In re K.H.* (2022) 84 Cal.App.5th 566, 600–602; see also *In re Caden C., supra,* 11 Cal.5th at pp. 639–641.)

We need not resolve here which standard applies as no one disputes the inquiry conducted below was inadequate and, thus, that the court's ICWA finding lacked adequate support. As noted, with regard to J.T.'s heritage, the trial court never made any inquiry of its own nor did it find that the department's inquiry was proper and sufficient. We characterize the trial court's finding as implicit because, without such a finding, its

---

[6] Subsequent statutory references will be to the Welfare and Institutions Code unless noted.

obligation would have been to order further inquiry to ensure that the appropriate tribe had notice and was given the opportunity to intervene before the court terminated parental rights and approved the adoption plan. Even accounting for the initial confusion as to the identity of Kenneth's father, paternity testing eventually brought J.T. within the definition of "parent" under ICWA. (See § 224.1, subd. (c); 25 U.S.C. § 1903(9).) At that point, both the department and the court were required to ask J.T. about his potential native heritage. (See § 224.2, subds. (b), (c); see also Cal. Rules of Court, rule 5.481(a)(2).)

"On a well-developed record, the court has relatively broad discretion to determine whether the agency's inquiry was proper, adequate, and duly diligent on the specific facts of the case. However, the less developed the record, the more limited that discretion necessarily becomes. When, as in this case, the court's implied finding that the agency's inquiry was proper, adequate, and duly diligent rests on a cursory record and a patently insufficient inquiry that is conceded, the only viable conclusion is that the finding is unsupported by substantial evidence and the court's conclusion to the contrary constitutes a clear abuse of discretion." (*In re K.H., supra,* 84 Cal.App.5th at p. 589; see *In re E.C., supra,* 85 Cal.App.5th at pp. 156–157.) Such is the case here. (See *In re K.H.,* at pp. 605–606; *In re Ricky R.* (2022) 82 Cal.App.5th 671, 679–680 (*Ricky R.*).) Similarly here, on this cursory record, where the parties do not dispute that the ICWA inquiry was inadequate, we agree it cannot stand.

The department does not argue that the inquiry made *before* termination of parental rights was adequate. Instead, it asserts the postjudgment inquiry rendered any error harmless. We reject the contention.

Ordinarily, appellate courts review a trial court's judgment based on the record as it existed when the trial court ruled. (*In re Zeth S.* (2003) 31 Cal.4th 396, 405 (*Zeth S.*).) It is ultimately within the purview of the juvenile court to make determinations of credibility and assessments of adequacy because it is uniquely positioned to reach these conclusions based on its familiarity with the case and those involved. The department's assertion that its postjudgment report rendered any prior failure of inquiry harmless "necessarily requires that we treat the factual assertions therein as undisputed, which we cannot do" because, absent exceptional circumstances, "[t]his type of factfinding is precisely what must occur in the juvenile court in the first instance [citation], where additional and possibly competing evidence may be offered; and the court, on a more fully developed record, will assess weight and credibility as appropriate, and make its factual findings." (*In re E.C., supra,* 85 Cal.App.5th at p. 150; see *In re G.H.* (2022) 84 Cal.App.5th 15, 32–33; *Ricky R., supra,* 82 Cal.App.5th at p. 682.)

Our conclusion is fully consistent with *Zeth S., supra,* 31 Cal.4th 396 and *In re Josiah Z.* (2005) 36 Cal.4th 664 (*Josiah Z.*), neither of which involved ICWA. In *Zeth S.*, the minor's counsel advocated for termination and represented that the maternal grandfather was ready and willing to adopt. Over the mother's objection, the juvenile court terminated parental rights and approved adoption as the permanent plan. (*Zeth S.*, at p. 403.) On the mother's appeal, the minor's appellate counsel submitted a letter brief stating counsel had conducted her own investigation of the minor's current circumstances and found Zeth did well when the mother visited him, the mother had assumed primary caretaking duties during these visits, and the

maternal grandfather " 'felt pressure to adopt [the minor] and preferred to become [the minor's] legal guardian.' " (*Ibid*.) The minor's appellate counsel joined with the mother in arguing parental rights should not have been terminated. After supplemental briefing, the Court of Appeal reversed based, in part, on appellate counsel's letter. (*Id*. at p. 404.) *Zeth S.* reversed, noting "[i]t has long been the general rule and understanding that 'an appeal reviews the correctness of a judgment as of the time of its rendition, upon a record of matters which were before the trial court for its consideration,' " and "[t]here is no blanket exception to the general rule for juvenile dependency appeals." (*Id*. at p. 405.) The court reasoned that "[t]he chief problem with the Court of Appeal's approach, however well intentioned it was, is that it effectively substitutes the reviewing court's own post hoc determination of whether termination of parental rights remains in the minor's best interests for the legislatively mandated determination that follows when the comprehensive juvenile dependency statutory scheme is dutifully adhered to in the trial court. . . . The statutory scheme does not authorize a reviewing court to substitute its own judgment as to what is in the child's best interests for the trial court's determination in that regard, reached pursuant to the statutory scheme's comprehensive and controlling provisions." (*Id*. at pp. 409–410, fn. omitted.) Similarly here, California's comprehensive scheme implementing ICWA contemplates the juvenile court will make the threshold determinations as to adequate inquiry and reason to know. A reviewing court's determination that a postjudgment ICWA inquiry was sufficient substitutes its judgment for that of the juvenile court, which is to make those findings in the first instance.

In *Josiah Z.*, the minors were put in a nonrelative placement after the juvenile court terminated parental rights. The minors' counsel challenged the placement, arguing the children should have been placed with the paternal grandparents. The juvenile court found no abuse of discretion in the placement, noting the grandparents' criminal record. The minors appealed. (*Josiah Z., supra,* 36 Cal.4th at p. 672.) As relevant here, *Josiah Z.* addressed whether appellate counsel had authority to move to dismiss the minors' appeal based on counsel's own assessment of what was in their best interests. In concluding counsel could so move, *Josiah Z.* rejected the argument "that hearing a motion to dismiss the appeal based on appellate counsel's best-interests assessment would violate the proscription against consideration of postjudgment evidence on appeal" under *Zeth S.* (*Id.* at p. 676.) Although cautioning that "an appellate court should not consider postjudgment evidence going to the merits of an appeal and introduced for the purposes of attacking the trial courts judgment," *Josiah Z.* suggested that "the generally applicable appellate rules authorize such a motion [to dismiss], and appellate courts routinely consider limited postjudgment evidence in the context of such motions." (*Ibid.*) Whether a child should be permitted to abandon a challenge to the trial court ruling is a limited question "distinct from the broader issues resolved by the trial court." (*Ibid.*) In this context, *Josiah Z.* concluded consideration of postjudgment evidence expedited proceedings and promoted finality.

The reasoning of *Josiah Z.* does not apply here. That case turned on whether parties could properly dismiss their own appeal based on a reassessment of current circumstances by appellate counsel. Dismissing an appeal in such a case would not place an appellate court in the position of usurping the

factfinding function generally given to the juvenile court. By contrast here, the complete failure to inquire about father's native heritage would necessitate reversal for further investigation but for the Court of Appeal's consideration of the department's postjudgment inquiry evidence and its own assessment that this evidence was credible and sufficient. As *In re E.C.* reasoned, "[w]hile we recognize that the Department is seeking to shore up the juvenile court's judgment rather than undermine it [citation], this distinction does not overcome the general proscription against routinely accepting postjudgment evidence to resolve issues raised on appeal, absent exceptional circumstances not present here . . . ." (*In re E.C., supra,* 85 Cal.App.5th at p. 150.)

The department asserts Code of Civil Procedure section 909 supports its position. That provision states: "In all cases where trial by jury is not a matter of right or where trial by jury has been waived, the reviewing court may make factual determinations contrary to or in addition to those made by the trial court. The factual determinations may be based on the evidence adduced before the trial court either with or without the taking of evidence by the reviewing court. The reviewing court may for the purpose of making the factual determinations or for any other purpose in the interests of justice, take additional evidence of or concerning facts occurring at any time prior to the decision of the appeal, and may give or direct the entry of any judgment or order and may make any further or other order as the case may require. This section shall be liberally construed to the end among others that, where feasible, causes may be finally disposed of by a single appeal and without further proceedings in the trial court except where in the

interests of justice a new trial is required on some or all of the issues."

We cautioned in *Zeth S.* that, although this provision generally authorizes appellate courts to make factual determinations in nonjury cases, such authority " 'should be exercised sparingly,' " and " '[a]bsent exceptional circumstances, no such findings should be made.' " (*Zeth S., supra,* 31 Cal.4th at p. 405, quoting *Tyrone v. Kelley* (1973) 9 Cal.3d 1, 13, italics omitted.) As one court observed, "claims of error under ICWA are not rare and will not typically present the type of exceptional circumstances warranting deviation from the general rule" that appellate courts should not engage in factfinding. (*In re K.H., supra,* 84 Cal.App.5th at p. 612.) Indeed, if we accept the department's position, it is unclear how it could be cabined to the ICWA context, as it would seem to countenance appellate courts' receipt of new evidence in *any* case involving harmless error review, making consideration of such evidence routine rather than exceptional. Cases have properly rejected application of Code of Civil Procedure section 909 to an appellate inquiry of whether ICWA was properly complied with. (See *In re E.C., supra,* 85 Cal.App.5th at p. 135; *In re G.H., supra,* 84 Cal.App.5th at pp. 32–33; *Ricky R., supra,* 82 Cal.App.5th at p. 682.)

We have applied Code of Civil Procedure section 909 when warranted. For example, in *In re D.P.* (2023) 14 Cal.5th 266, we held the father's appeal from the juvenile court's finding of dependency jurisdiction was mooted by that court's later termination of jurisdiction while the appeal was pending. Nevertheless, we remanded the matter to the Court of Appeal to "allow Father [the opportunity] to introduce additional evidence in support of discretionary review if appropriate," citing Code of

Civil Procedure section 909. (*In re D.P.*, at p. 287.) Unlike the present case, however, the additional evidence contemplated in *D.P.* pertained not to the underlying merits of the issue on appeal, i.e., whether the juvenile court properly exercised dependency jurisdiction, but to the collateral issue of whether the Court of Appeal should exercise its discretion in deciding a technically moot case. Although we affirm that appellate factfinding under Code of Civil Procedure section 909 is proper when exceptional circumstances are shown, such circumstances have not been demonstrated here.[7]

The department makes no effort to establish this case involved exceptional circumstances warranting appellate factfinding under Code of Civil Procedure section 909. Instead, it repeatedly asserts its postjudgment memo should be considered because it provided "conclusive information showing that father does not have any Native American heritage . . . ."

However, the nature of this evidence only highlights why it should be presented to the juvenile court rather than for the first time on appeal. The department's interview of paternal grandmother suggested she believed that any native heritage reflected in a DNA test derived from her Mexican ancestry. Whether the paternal grandmother's explanation should be credited, as well as whether the department's efforts constituted "proper and adequate further inquiry and due diligence" (§ 224.2, subd. (i)(2)), are determinations the statutory scheme

---

[7]　We need not further discuss here what circumstances might be sufficiently exceptional to permit an appellate court to invoke Code of Civil Procedure section 909. We urge, however, that any receipt of postjudgment evidence and appellate factfinding should be exercised sparingly lest the exception swallow the rule.

contemplated should be made by the juvenile court in the first instance. At most, the department's proffer provided additional evidence from which the juvenile court could have determined whether an adequate inquiry into Kenneth's native heritage had been made, which, in turn, would have bolstered a conclusion that there was no reason to know Kenneth was an Indian child. Absent exceptional circumstances not present here, evidence on those issues should be presented to the juvenile court in the first instance for that court's determinations regarding the adequacy of the inquiry and whether ICWA applies under these circumstances.

Evidence of a postjudgment inquiry also is not a proper subject of augmentation or judicial notice. A reviewing court may order the appellate record augmented to include "[a]ny document filed or lodged in the case in superior court . . . ." (Cal. Rules of Court, rule 8.155(a)(1)(A).) However, "[a]ugmentation does not function to supplement the record with materials not before the trial court" when it made its order. (*Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3; *Ricky R., supra,* 82 Cal.App.5th at p. 681.) Although the department lodged its memo with the juvenile court, it did so only after that court's judgment, when the case was already on appeal. "The augmentation procedure cannot be used to bring up matters occurring during the pendency of the appeal because those matters are outside the superior court record." (*In re K.M.* (2015) 242 Cal.App.4th 450, 456.) Similar reasoning applies to judicial notice requests: " 'Reviewing courts generally do not take judicial notice of evidence not presented to the trial court' absent exceptional circumstances." (*Haworth v. Superior Court* (2010) 50 Cal.4th 372, 379, fn. 2; see Evid. Code, §§ 452, subd. (d), 453.) As discussed, no exceptional circumstances appear

here. Further, a court " ' "may take judicial notice of the existence of each document in a court file, but can only take judicial notice of the truth of facts asserted in documents such as orders, findings of fact and conclusions of law, and judgments." ' " (*People v. Franklin* (2016) 63 Cal.4th 261, 280.) The department's postjudgment memo did not constitute such a document.

Contrary to the department's suggestion, routinely allowing evidence of postjudgment ICWA inquiry to cure defects in the inquiry performed before judgment would not promote "the state's strong interest in the expeditiousness and finality of juvenile dependency proceedings . . . ." (*Zeth S., supra,* 31 Cal.4th at p. 412; see *Josiah Z., supra,* 36 Cal.4th at p. 676.) As we have noted, "Indian tribes have interests protected by ICWA that are separate and distinct from the interests of parents of Indian children." (*Isaiah W., supra,* 1 Cal.5th at p. 13.) "The relevant rights under ICWA belong to Indian tribes and they have a statutory right to receive notice where an Indian child may be involved so that they may make that determination." (*In re K.H., supra,* 84 Cal.App.5th at p. 591.) Because tribes have a right to intervene and even overturn prior judgments for failure to comply with ICWA (see Welf. & Inst. Code, § 224.4; 25 U.S.C. §§ 1911(c), 1914), the lack of timely and proper inquiry can undermine expeditious resolution and call into doubt the finality of juvenile court orders. (See *In re A.R.* (2022) 77 Cal.App.5th 197, 208.) Further, routinely having an appellate court consider these questions in the first instance, as opposed to the juvenile court, which is more familiar with all the relevant circumstances, only increases the chances of an erroneous finding that a sufficient inquiry has been conducted. We disapprove *In re Allison B.* (2022) 79 Cal.App.5th 214, 218–220

and *In re A.B.* (2008) 164 Cal.App.4th 832, 843 to the extent they suggest that an appellate court may routinely consider these questions in the first instance.

We emphasize the narrowness of our holding. Where the juvenile court finds that ICWA does not apply based on an inadequate inquiry into a child's native heritage, an appellate court, absent exceptional circumstances, may not consider evidence uncovered during a postjudgment inquiry to conclude the failure to conduct a proper inquiry was harmless.

In sum, the Court of Appeal below properly concluded the required inquiry into a child's native heritage did not satisfy statutory mandates. Because exceptional circumstances were not present here, the reviewing court should not have gone on to consider evidence of the department's postjudgment inquiry to conclude the error was harmless. Consistent with our decision in *Dezi C.*, *supra*, ___ Cal.5th ___, we reverse the judgment here and order a conditional remand to the juvenile court for a proper inquiry and further proceedings. (See *In re C.L.* (2023) 96 Cal.App.5th 377, 392; *In re V.C.* (2023) 95 Cal.App.5th 251, 262–263.) Nothing we say here undermines the authority conferred by Code of Civil Procedure section 909 when exceptional circumstances have been established.

## III. DISPOSITION

The Court of Appeal's judgment is reversed with directions to conditionally reverse the juvenile court's order terminating parental rights. The matter is to be remanded to the juvenile court for compliance with the inquiry and notice requirements of sections 224.2 and 224.3. If the juvenile court thereafter finds a proper and adequate inquiry, conducted with due diligence, has taken place and there is no reason to know minor is an

Indian child, making ICWA inapplicable, (§ 224.2, subd. (i)(2)), the court shall reinstate the order terminating parental rights. If the juvenile court concludes ICWA applies, it shall proceed in conformity with ICWA and California implementing provisions. (See 25 U.S.C. § 1912(a); Welf. & Inst. Code, §§ 224.2, subd. (i)(1), 224.3, 224.4.)

**CORRIGAN, J.**

**We Concur:**

**GUERRERO, C. J.**
**LIU, J.**
**KRUGER, J.**
**GROBAN, J.**
**JENKINS, J.**
**EVANS, J.**

In re KENNETH D.

S276649


Concurring Opinion by Justice Groban


I agree with the majority that the Court of Appeal improperly considered postjudgment evidence in order to find that error in complying with the Indian Child Welfare Act of 1978 was harmless. (ICWA; 25 U.S.C. § 1901 et seq.) The majority rightly acknowledges "that appellate factfinding under Code of Civil Procedure section 909 is proper when exceptional circumstances are shown." (Maj. opn., *ante*, at p. 19.)[1] I concur that, on the facts of this case, "exceptional circumstances" have not been demonstrated here. (*Ibid*.) The memorandum from the Placer County Department of Health and Human Services (department) presented for postjudgment review contained conflicting hearsay statements concerning Kenneth D.'s Indian ancestry: Kenneth D.'s father "stated that he thought he might have Cherokee ancestry out of Oklahoma" while the paternal grandmother stated the father's statement was "not accurate" and that she was "unaware of any Native American Heritage." As the majority explains, this kind of conflicting evidence "should be presented to the juvenile court in the first instance for that court's determinations regarding the adequacy of the inquiry and whether ICWA applies under these circumstances." (*Id*. at p. 20.) The circumstances of this case are not

---

[1] Subsequent unspecified statutory references are to the Code of Civil Procedure.

1

" 'exceptional.' " (*In re Zeth S.* (2003) 31 Cal.4th 396, 405, italics omitted (*Zeth S.*).)

The majority also rightly emphasizes "the narrowness of our holding" (maj. opn., *ante*, at p. 22) and clarifies that "[n]othing we say here undermines the authority conferred by . . . section 909 when exceptional circumstances have been established" (*ibid.*). I write separately to make clear that section 909 continues to be a vehicle to admit postjudgment evidence in the appropriate case.[2]

Future cases may present circumstances that are more exceptional than those presented here, thereby making reliance on postjudgment evidence appropriate. For example, in *In re A.B.* (2008) 164 Cal.App.4th 832 (*A.B.*), the Court of Appeal found exceptional circumstances existed to augment the record with a copy of the mother's ICWA form that disclaimed any Indian heritage. (*Id.* at p. 843.) Similarly, in *In re E.L.* (2022) 82 Cal.App.5th 597, after the mother completed and signed an ICWA form stating that she may be part of the Tohono O'odham Nation, the Court of Appeal granted the prospective adoptive parent's request to augment the record with letters from the Tohono O'odham Nation confirming that the mother's children were *not* members of the tribe for the purposes of ICWA. (*E.L.*, at p. 608.) One can envision other examples that would qualify

---

[2]    I also write separately in the opinion issuing today *In re Dezi C.* (August 19, 2024, S275578) ___ Cal.5th ___ (*Dezi C.*). My dissenting opinion in *Dezi C.* explains that I would apply *People v. Watson* (1956) 46 Cal.2d 818 by adopting the Court of Appeal's harmless error standard, rather than adopting the majority's automatic conditional reversal rule for ICWA error. I note there that section 909 continues to be a viable vehicle to deal with the unique circumstances presented there.

as " 'exceptional.' " (*Zeth S., supra,* 31 Cal.4th at p. 405, italics omitted.) Imagine, for example, a situation where the department submits declarations explaining that both parents were native to a European country and had recently emigrated from that country, thereby making it essentially impossible that the child had American Indian ancestry. There may also be cases where the Court of Appeal allows for supplemental briefing and the opportunity for oral argument related to an ICWA inquiry (e.g., *In re Allison B.* (2022) 79 Cal.App.5th 214, 219 (*Allison B.*)) and the opposing party does not contest, or even affirmatively admits, the accuracy of postjudgment evidence demonstrating that the child is not of Indian descent. There may also be instances where a party presents postjudgment evidence that allows the Court of Appeal to determine that the party claiming noncompliance with ICWA has brought the appeal solely for purposes of delay. (Cf. *In re A.R.* (2022) 77 Cal.App.5th 197, 207 ["If Mother has brought this appeal for the purposes of achieving delay, as county counsel suggests, we condemn such tactics"].) There may also be situations where the specific circumstances of the parent or child present a more compelling case for expedited resolution, e.g., there is evidence that further delay may cause the child to lose a beneficial, permanent placement. (See *In re Christopher L.* (2022) 12 Cal.5th 1063, 1081 [" 'There is little that can be as detrimental to a child's sound development as uncertainty over whether he is to remain in his current "home," under the care of

his parents or foster parents, especially when such uncertainty is prolonged' "].)[3]

I also agree with the majority that the department's postjudgment memorandum does not constitute a proper use of judicial notice. (Maj. opn., *ante*, at pp. 20–21.) As the majority notes, " ' "Reviewing courts generally do not take judicial notice of evidence not presented to the trial court" absent exceptional circumstances.' " (*Id.* at p. 20, quoting *Haworth v. Superior*

---

[3] The majority cites with approval several cases that refused to admit postjudgment material pursuant to section 909. (Maj. opn., *ante*, at p. 18, citing *In re E.C.* (2022) 85 Cal.App.5th 123, 135; *In re G.H.* (2022) 84 Cal.App.5th 15, 32–33; *In re Ricky R.* (2022) 82 Cal.App.5th 671, 682.) I note that these postjudgment materials, like the materials here, appear to contain *contested* information from hearsay sources. For instance, in *Ricky R.*, the department sought consideration of a declaration stating "that the social worker spoke to maternal grandmother and maternal aunt in June 2022, and both of them reported no Indian ancestry." (*Ricky R.*, *supra*, 82 Cal.App.5th at p. 680.) However, that same declaration also reported that the social worker contacted the paternal grandmother and paternal great-grandmother and they reported that paternal great-great-grandparents had stated that "the family was " ' "part Indian," ' " but the paternal grandmother and paternal great-grandmother "could not remember which tribe." (*Ibid.*) As the majority correctly concludes, this kind of disputed information does not provide the kind of " 'exceptional circumstances' " contemplated by section 909. (*Zeth S., supra,* 31 Cal.4th at p. 405, italics omitted.) The majority also disapproves *Allison B.*, *supra*, 79 Cal.App.5th at pages 218–220 and *A.B.*, *supra*, 164 Cal.App.4th at page 843 "to the extent they suggest that an appellate court may routinely consider these questions in the first instance." (Maj. opn., *ante*, at p. 22.) I agree that the use of section 909 should not be " 'routine[]' " (*Allison B.,* at p. 219; see *A.B.,* at p. 841), but I do not read the majority as deciding that the specific use of section 909 based on the narrow facts presented in those cases was improper.

*Court* (2010) 50 Cal.4th 372, 379, fn. 2.) However, court documents, such as an ICWA form signed under penalty of perjury, may qualify as a court record under Evidence Code section 452, subdivision (d). (See *A.B., supra,* 164 Cal.App.4th at p. 839; *In re Z.N.* (2009) 181 Cal.App.4th 282, 298–301.) Similarly, one might envision a situation where there was a recent or contemporaneous dependency case involving a *sibling with the same parents.* (See *A.B.,* at p. 839; *Z.N.,* at p. 301.) If court documents revealed a comprehensive ICWA inquiry was recently performed in the *sibling's* proceeding, it may be appropriate to take judicial notice of those documents on appeal.

In sum, courts reviewing ICWA determinations must balance two sometimes competing interests: ICWA establishes the laudatory goal of "ensuring that the issue of Native American ancestry is addressed in every case [so] that we can ensure the collective interests of the Native American tribes will be protected." (*In re E.V.* (2022) 80 Cal.App.5th 691, 697.) However, courts must also ensure the prompt resolution of dependency proceedings in order to achieve "a stable, permanent placement that allows a caretaker to make a full emotional commitment to the child." (*In re Celine R.* (2003) 31 Cal.4th 45, 59.) There are likely to be exceptional future cases where uncontroverted, postjudgment evidence reveals that the child is not of Indian descent. In such instances, it is appropriate for the appellate court to rely upon section 909 to consider that information. This will allow appellate courts to avoid a situation whereby a beneficial, permanent placement for a child is delayed so that the dependency court can engage in needless additional inquiry as to the child's ICWA status. Where even a four-month delay in dependency proceedings "can be a lifetime to a young child" (*In re Marilyn H.* (1993) 5 Cal.4th

295, 310), courts should avoid unnecessary delay in cases where clear postjudgment evidence demonstrates that additional ICWA inquiry would be pointless. The majority does not foreclose the use of section 909 in such an exceptional case.


**GROBAN, J.**

**I Concur:**
**GUERRERO, C. J.**

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion**  In re Kenneth D.

_____

**Procedural Posture** (see XX below)
**Original Appeal**
**Original Proceeding**
**Review Granted (published)** XX 82 Cal.App.5th 1027
**Review Granted (unpublished)**
**Rehearing Granted**

_____

**Opinion No.** S276649
**Date Filed:** August 19, 2024

_____

**Court:** Superior
**County:** Placer
**Judge:** Colleen M. Nichols

_____

**Counsel:**

Janette Freeman Cochran, under appointment by the Supreme Court, for Defendant and Appellant.

Karin E. Schwab, County Counsel, Lydia B. Stuart, Jason M. Folker and Becky Martin, Deputy County Counsel, for Plaintiff and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Janette Freeman Cochran
301 East Colorado Boulevard, Suite 304
Pasadena, CA 91101
(626) 584-9823

Jason M. Folker
Deputy County Counsel
175 Fulweiler Avenue
Auburn, CA 95603
(530) 886-4630